# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| **REEVES CONSTRUCTION COMPANY,**<br><br>*Plaintiff*,<br><br>v.<br><br>**HAYWARD INDUSTRIES, INC., and DIACOM CORPORATION,**<br><br>*Defendants*. | **CIVIL ACTION NO.**<br>**5:16-cv-00329-TES** |

## ORDER GRANTING DIACOM'S MOTION FOR SUMMARY JUDGMENT

Presently before the Court is Defendant Diacom Corporation's ("Diacom") Motion for Summary Judgment [Doc. 59] and Motion in Limine to Exclude Expert Testimony of Dr. Fredrick Willard [Doc. 61]. For the reasons that follow, Diacom's Motion for Summary Judgment is **GRANTED**, and its Motion in Limine is **DENIED as moot**.

### FACTUAL BACKGROUND

In 2008, Plaintiff ordered an MP-10S 75tph Asphalt Emulsion System, Continuous Injection Process machine ("CIP") from non-party Dalworth Machine Products ("Dalworth") to be used in manufacturing asphalt paving and other materials. [Doc. 1, ¶¶ 6–8; Doc. 69-1, ¶¶ 1, 4]. The CIP included an acid system that supplied hydrochloric acid for use in manufacturing the asphalt products. [*Id.* at ¶ 4]; Burdette Depo., pp. 30:7–16, 34:12–21]. Prior to Plaintiff using the CIP, Dalworth installed a gauge guard

manufactured by Defendant Hayward Industries, Inc. ("Hayward") and distributed to Dalworth by non-party Wipco, which was used to protect the CIP's pressure gauge from corrosive or otherwise damaging fluids. [Doc. 69-1, ¶¶ 10, 11; Doc. 83, ¶ 10, 12]. A component part of the gauge guard was a diaphragm manufactured by Diacom and composed of Viton, a fluoropolymer. [Doc. 83, ¶¶ 12, 20]. The gauge guard is depicted below with the diaphragm labeled as "4. FPM Membrane."



On June 2, 2014, the Viton diaphragm failed due to hydrogen chloride (i.e. the gaseous form of undissolved hydrochloric acid) continuously permeating through the Viton diaphragm over time and reacting with water on the other side of the diaphragm to create hydrochloric acid, which corroded the stainless-steel parts of the pressure gauge to which the gauge guard was attached. [Doc. 1, ¶ 18; *see also* Doc. 94, pp. 22:23—25:22].[1] The CIP leaked approximately 30 gallons of hydrochloric acid throughout Plaintiff's facility, destroying the CIP and part of the building in which the CIP was housed. [Doc.

---

[1] To put it in high-level chemistry terms, when hydrochloric acid and stainless steel get together, what happens next "ain't good."

69-1, ¶¶ 21, 22]. Plaintiff alleges that the leak caused approximately $1.8 million in damages. [Doc. 1, ¶ 28].

As a result, Plaintiff filed the instant lawsuit, alleging that the damages to its property were proximately caused by Hayward and Diacom's negligent failure to (1) use due care in the selection of materials for use in acid-contact environments, (2) use due care to avoid causing injury to others, (3) provide accurate and timely information concerning the suitability of their products for acid-contact environments, including the effect of permeability on the useful life of their products, and (4) provide adequate warnings regarding the likelihood that their products would fail over time when used in acid-contact environments. [Doc. 1, ¶ 26].

Diacom moves for summary judgment on all of Plaintiff's claims against it and seeks to exclude the testimony of Plaintiff's expert witness, Dr. Fred Willard. The Court held a hearing on the issues, conducted an extensive review of the record, and now finds as follows.

## DISCUSSION

### A. Standard of Review

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As to issues for which the movant

would bear the burden of proof at trial, the "movant must affirmatively show the absence of a genuine issue of material fact and support its motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party on all of the essential elements of its case." *Landolfi v. City of Melbourne*, 515 F. App'x 832, 834 (11th Cir. 2013) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)). As to issues for which the non-movant would bear the burden of proof at trial, the movant may (1) simply point out an absence of evidence to support the non-moving party's case or (2) provide "affirmative evidence demonstrating that the [non-movant] will be unable to prove its case at trial." *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant satisfies its burden, the burden shifts to the non-movant, who must "go beyond the pleadings and present *affirmative evidence* to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick*, 2 F.3d at 1115–17) (emphasis added). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)).

4

B. **Design Defect**

Plaintiff's first claim charges Diacom with breaching its duty to "use due care in the selection of materials for use in acid-contact environments and applications." [Doc. 1, ¶ 25(a)]. This allegation seems to implicate design-defect liability; however, during the hearing on Defendants' motions, Plaintiff's counsel specifically indicated that this is not a design-defect case. [Doc. 94, p. 92:12–18].[2] Accordingly, Plaintiff has waived any design defect claim that can be inferred from the Complaint, and the Court will not consider any allegations or arguments as to such a claim. To the extent a design-defect claim is present, it is **DISMISSED without prejudice**.

C. **Failure to Warn**

The true crux of this case is Defendants' alleged failure to warn of the diaphragm's permeability, which Plaintiff claims was a hazardous condition. *See, e.g.*, [Doc. 71, p. 25] ("The issue is that liquids, including but not limited to hydrochloric acid, can permeate through the [diaphragm], and that Diacom failed to warn of this hazard.").[3] Diacom

---

[2] THE COURT: But y'all [Plaintiff's counsel] aren't arguing there was a design defect? You're not arguing that the diaphragm didn't work like it was supposed to, are you?
MR. BESSHO: No, Your Honor. I mean, there are some cases that say failure to warn is part of a design issue. But as far as the physical design of the product itself, we agree it functioned as it was designed to function.

[3] Plaintiff asserts two failure-to-warn theories of recovery in its Complaint: (1) "[Defendants] failed to provide accurate and timely information concerning all of the properties of materials represented as suitable for use in acid-contact environments and applications, including the property of permeability and the effect of such permeability on the useful life of the materials when used in acid-contact environments and applications," and (2) "[Defendants] failed to provide adequate and meaningful warnings to users of materials and devices represented as suitable for use in acid-contact environments and applications concerning the likelihood of failure of such materials and devices over time when used in acid-contact

5

offers four arguments in support of its motion for summary judgment. First, it argues that it owed no duty to warn Plaintiff of the permeability of its diaphragm because Plaintiff's ultimate use of the diaphragm and the risk of harm were not reasonably foreseeable. Second, Diacom contends that it had no duty to warn Plaintiff because Plaintiff was a sophisticated user with knowledge of the permeability of fluoropolymers. Third, Diacom claims that at least two learned intermediaries stood between Diacom and Plaintiff in the supply chain, absolving Diacom of any duty to warn. Finally, Diacom argues that the chain of causation was broken by Dalworth and Plaintiff's parent company's intervening negligence. Because the Court agrees that the risk of harm Plaintiff faced was unforeseeable, Diacom is entitled to summary judgment, and the Court need not address Diacom's other arguments.

It is well-settled that manufacturers have a duty to make their products reasonably safe for their intended or foreseeable uses. *Chrysler Corp. v. Batten*, 450 S.E.2d 208, 211 (Ga. 1994). Manufacturers also have a duty to warn users of any nonobvious, foreseeable dangers they know or should know will arise from the normal use of their products.

---

environments and applications." [Doc. 1, ¶ 26(c), (d)]. In its brief in response to Diacom's motion for summary judgment, Plaintiff does not argue that Diacom should have given a warning about its diaphragm's useful life. However, at the hearing on Defendants' motions, Plaintiff's counsel cursorily opines, "I would think [Diacom] would have some duty to say, hey, are you going to be using [the diaphragm] with hydrochloric acid? If so, beware it's permeable, you've got to replace it every so often." [Doc. 94, p. 96:13–16]. Plaintiff offers no legal support for this contention in its brief or elsewhere. Because the Court finds below that Diacom did not have actual or constructive knowledge that its diaphragm would be used with hydrochloric acid and that Diacom could not reasonably foresee such a use, it also concludes that Diacom had no duty to provide a special useful-life warning with regard to the use of its diaphragm with hydrochloric acid.

6

*Certainteed Corp. v. Fletcher*, 794 S.E.2d 641, 645 (Ga. 2016). Manufacturers of component parts may also be liable for failure to warn if their products reach the consumer in their original state and the manufacturer knows or should know of their nonobvious, foreseeable dangers. *See Giordano v. Ford Motor Co.*, 299 S.E.2d 897, 899 (Ga. Ct. App. 1983) ("[W]here the [component] product reaches the ultimate user essentially in its original state, . . . the manufacturer is not necessarily absolved from the duty to warn, if such a duty would otherwise exist."). When assessing whether a duty to warn exists—which is a question of law, *see City of Rome v. Jordan*, 426 S.E.2d 861, 862 (Ga. 1993)—the Court considers "foreseeability of the use in question, the type of danger involved, and the foreseeability of the user's knowledge of the danger. Such matters generally are not susceptible of summary adjudication and should be resolved by a trial." *R & R Insulation Servs., Inc. v. Royal Indem. Co.*, 705 S.E.2d 223, 233 (Ga. Ct. App. 2010) (quoting *Omark Indus. v. Alewine*, 319 S.E.2d 24, 25–26 (Ga. Ct. App. 1984)). Nevertheless, the Court grants summary judgment to Diacom because it finds, as a matter of law, that the particular hazard in this case was not reasonably foreseeable and that there is no evidence that Diacom knew or should have known of the hazard.

As a preliminary matter, there is no evidence that Diacom had actual knowledge of the specific use to which the diaphragms it supplied to Hayward would be put. Both Hayward and Diacom's 30(b)(6) deponents testified that Hayward submitted a drawing of the diaphragm it sought for its gauge guards and specified the material from which it

7

wished the diaphragm to be made. [Stone Depo., pp. 53:21—54:12; Doyle Depo., p. 30:9–25]. However, Hayward never told Diacom that the diaphragms would be used in high acid-concentration environments. [Doyle Depo., p. 39:18–21].

Nevertheless, Plaintiff argues that Diacom had actual knowledge that its diaphragms were permeable and would (or could) be used in acidic environments, and Plaintiff points to Diacom's website as evidence of Diacom's actual knowledge of the hazard of acid permeability. On its website, Diacom states that "[f]luoroelastomers [like Viton] . . . are ideal for the most aggressive environments that require chemical resistance . . . ." and that "[o]ther potential benefits [of fluoroelastomers] include . . . [e]xceptional chemical resistance [and] [v]ery low permeability." [Doc. 70-4, p. 21]. Diacom's "Diaphragm Design Guidebook" also indicates that fluorocarbons[4] have "fair-good" chemical resistance to "acid-dilute concentration" chemicals but gives no definition or examples of what an "acid-dilute concentration" chemical would be. [Doyle Depo., p. 18:12–21; Ex. 2, p. 25]. These statements are a far cry from evidencing Diacom's knowledge or foresight regarding what both of the proffered experts assert was the true hazard in this case: that the diaphragm would be used with a corrosive acid containing gaseous molecules that would (1) permeate through the diaphragm over time, (2)

---

[4] Diacom's 30(b)(6) deponent testified that the properties of "fluorocarbon FKM" are the same as properties of diaphragms made with Viton. [Doyle Depo., p. 13:5–10]; see also [Doc. 69-1, ¶ 10 n.1].

combine with water inside the gauge guard on the other side of the diaphragm, and then (3) come into contact with and corrode stainless steel.[5]

At most, Diacom's website evidences that Diacom knew or should have known that their fluoroelastomer diaphragms would be used with "acid-dilute concentration" chemicals that may or may not permeate the diaphragm's membrane.[6] But the record evidence also shows that Diacom created diaphragms for a wide array of products and customers, including those in the "automotive, industrial, aerospace, food and water processing, [and] medical instrument" industries, and Hayward was not one of Diacom's larger customers. [Doyle Depo., pp. 36:24—37:3; Ex. 2, p. 3]. Based on the diversity of products Diacom manufactured, it would be unreasonable for Diacom to foresee or ascertain every combination of chemicals, liquids, gauge guards, and other materials that could potentially be used with its diaphragms and warn every purchaser or user about all of those potential combinations. *See Certainteed*, 794 S.E.2d at 645 ("In fixing the bounds of duty, not only logic and science, but public policy play an important role. To impose a duty that either cannot feasibly be implemented . . . would be poor public policy

---

[5] *See* [Doc. 94, pp. 23:23—26:9; Longo Depo., pp. 27:18—28:8]. But if, as Plaintiff suggests, the hazard in this case was the fact that Diacom's diaphragms are permeable, the statements on Diacom's website regarding permeability were likely sufficient to inform anyone who looked that permeability exists and that it relates to Diacom's product in some way. As Plaintiff does not challenge the sufficiency of the information that is actually present on Diacom's website, the Court does not consider whether the information is an effective warning.

[6] Moreover, Plaintiff's statement that "Diacom's literature represents that its Viton diaphragm has 'excellent' resistance to permeation" is misleading. The literature to which Plaintiff refers states only that Diacom's fluorocarbon diaphragms have excellent resistance to *nitrogen* permeation, which is not at issue in this case. [Doyle Depo., p. 16:10–21; Ex. 2, p. 032].

9

indeed."). Accordingly, the Court finds that Diacom had no actual knowledge of the hazard at issue in this case and that Diacom could not have reasonably foreseen that hazard. Accordingly, Diacom had no duty to warn of the hazard from which Plaintiff claims it suffered, and the Court need not address Diacom's remaining arguments in support of its motion for summary judgment.

## CONCLUSION

Having found that Diacom had no duty to warn Plaintiff of the permeability of its diaphragms or of the useful life of its diaphragms when used with hydrochloric acid, the Court **GRANTS** Diacom's Motion for Summary Judgment [Doc. 59].[7] Plaintiff's claims against Diacom are **DISMISSED**.

**SO ORDERED**, this 4th day of February, 2019.

s/Tilman E. Self, III
**TILMAN E. SELF, III, Judge**
**UNITED STATES DISTRICT COURT**

---

[7] Dr. Fred Willard's expert testimony and report, which Diacom moves to exclude, had no bearing on this Order, except with respect to his opinion as to what caused the CIP to leak hydrochloric acid. Even in the absence of Dr. Willard's testimony, the Court's decision is supported by the testimony of Dr. William Longo, Hayward's expert witness. Thus, Diacom's Motion in Limine to Exclude Dr. Willard's Testimony [Doc. 61] **is DENIED as moot**.

10